### NOLAN MAYNARD V. STATE.
No. 24744. April 19, 1950.

522

*C. C. McKinney, Cooper,* and *W. H. Crunk,* Greenville, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from a conviction for murder with malice and a sentence of five years in the penitentiary.

Nolan Maynard was the sheriff of Delta County, serving his second term. He lived with his wife and a niece in an apartment in the court house provided for the purpose. Prior to that time he had served as deputy sheriff and became acquainted with Dorothy Palmer, a girl seventeen years of age, while she was working in a cafe. This employment was for a short period of time. Thereafter she lived with her parents, for the most part, who resided on a farm a mile and a half north of Cooper. Soon after appellant met this girl he began associating with her and, according to the mother's testimony, called on her and for her at her home practically every night for a period of more than four years. Testifying in his own behalf, appellant admitted this relationship with the girl, but differed with the mother's testimony as to the frequency of his calls.

On May 26, 1948, during the latter part of his second term as sheriff, he went to Dallas in the early morning, returning just before noon. According to the undisputed evidence, he made the third call at the Palmer home for Dorothy. She left with him at about one o'clock. They drove out on the Paris Highway, returned to the edge of the town of Cooper and then went eastward on the Cooper-Sulphur Springs Highway, a distance of some five or six miles. Soon thereafter he returned to Cooper, drove up to a hospital with the girl in a dying condition. She was dead at the time the doctor examined her in the hospital. A bullet had passed through her neck, entering just

left of the Adam's apple, struck the collar bone and glanced, passing out on the right side just below the lobe of the right ear.

While the body was being removed from the automobile, a party assisting him asked if it was a car accident and he nodded his affirmative answer. In the hospital the doctor asked the cause of the injury and the appellant told him it was an automobile accident.

There is evidence that appellant had been drinking at the time, to some extent. Later in the afternoon he was arrested by the state highway officer, while sitting in his car by the side of the highway between Paris and Cooper. He was drunk and unconscious. This constitutes the chief evidence upon which the state relies for a conviction.

Testifying in his own behalf, appellant said that the deceased had frequently threatened to commit suicide; that she had attempted to do so at one time; and that on this occasion she was insisting that he leave his wife, get a divorce and go with her to California. This, he says, he refused to do. He says that while they were driving along the highway, approaching the first bridge across the South Sulphur, she asked for some chewing gum in his glove compartment; that he removed the key from the ignition switch; used it to unlock the glove compartment; and, while she was supposed to be getting the chewing gum, he was replacing the key in the ignition switch. Instead of getting the gum, she grabbed his pistol—which she knew he kept in this compartment—and shot herself before he could do anything about it. He returned with her to the hospital for the purpose of getting aid, and did not know whether she was dead or not at the time he got there. He used kleenex, which he had available, in an effort to stop the flow of blood, but failed in doing so.

When the officers arrested appellant they took him to Sherman, some sixty to sixty-five miles away, and placed him in the Grayson County jail. By the time they reached Sherman he had recovered somewhat from his drunken condition and was able to walk with little assistance from the car to the court house. Some hours thereafter, but admittedly while he was in a nervous condition, the district attorney and arresting officer visited him and secured a written statement which differs but little, and in no material aspect, from the evidence which he gave on his trial.

The brief facts pertinent to the trial of this case are gleaned from a voluminous record of two hundred and sixty-three pages. Ninety per cent of this record, made by both the state and defense, is wholly immaterial to any issue in the case. The state must rely for a conviction upon the presumption arising from the circumstance that this woman met a violent death, that appellant was the only person there, and that his pistol inflicted the mortal wound. The officers were diligent in their investigation. They took the pistol to a fingerprint expert, Mr. Jerome Wright, Chief Deputy Sheriff, at Paris. They took pictures of the wounds while the body lay at the hospital. They made paraffin tests in an effort to determine which of the parties held the pistol at the time it was fired. They made the usual tests in the department of public safety, at Austin, in an effort to determine the distance the pistol was from the neck when fired. The fingerprint test resulted in nothing favorable or unfavorable. The paraffin test gave no proof as to which one held the pistol. The officer testifying as to the results of firing the pistol with the cartridges found in it after the shooting, gave a range of half an inch to two feet from the pistol to the wound. Extensive investigations were made as to the relationship of the appellant and the deceased and we find nothing in it, by either side, that has any bearing whatsoever. It is quite questionable as to whether or not the circumstantial evidence against appellant was sufficient to sustain the jury's verdict.

In seeking to strengthen its case the state called as a witness Dr. Ralph W. Jenks, whose evidence appears to have been relied upon as expert testimony. He said that he had served a great many years in the emergency hospital service of the city of Dallas and had attended many persons who had been shot to death, including numerous ones identified as having committed or attempted to commit suicide. After so qualifying, Bill of Exceptions No. 12 recites that he was asked the following question: "Doctor, I will ask you if during the course of those calls, the many calls you have testified about, where a person has been reported to have committed suicide, state whether or not you ever found any one on those calls who had shot themselves in the neck?" Appellant timely objected to this question and the court permitted the doctor to testify over said objection: "No, sir, not with a shot gun, pistol or firearm." The district attorney then asked "On occasions you have had to make calls where you have discovered people had been shot as the result of gun shot wounds, where it was reported the committed suicide, on what portions of the body did you find they shot themselves?" The court permitted him to testify, over objec-

tions, that in those cases which were definitely determined by law enforcement officers to have been suicide, they were usually shot along a line drawn through the right temple, or at other places which he indicated such as in the mouth, on the chest, etc., none of which was through the neck.

It is clear this evidence was intended by the state and certainly had the effect of advising the jury that according to his experience, people did not attempt suicide by shooting themselves in the neck.

In his brief appellant has not treated this bill of exception, so far as we are able to analyze the brief. He brings the complaints under the heading of "Points." We have frequently said that points have no part in briefs in criminal cases. The bill of exception brings the matter squarely for our consideration, regardless of whether it is discussed in his brief or not. Referring to Bill of Exceptions No. 12, the state's attorney has said, in his brief: "Appellee thinks the evidence complained of in the bill was probably not admissible, but the bill does not reflect any injury to the appellant by reason of its admission. Appellee refers to the trial court's qualification on the bill." The qualification which the court wrote merely gives his reason for believing that the evidence was admissible and does not in any sense attempt to modify or change the evidence set out, or call attention to anything that would, in our opinion, justify the admission of the evidence.

This character of testimony clearly does not come within the "expert testimony" class. We cannot agree with the state's attorney that it was not harmful. That was the purpose for which the prosecution offered it and they certainly believed it would have that effect or the state would not have gone to the trouble of bringing an "expert". for the purpose. The court said in his qualification that it was admitted to aid the jury in passing on the question as to whether or not the deceased did or could have inflicted the fatal wound. It makes no difference how much we may discount this testimony, from a legal standpoint, it cannot be said it had no influence on the jury.

Another bill complains of the statement of the arresting officer that he took appellant to Sherman jail because of sentiment arising in Cooper. This was wholly improper. The court sustained the objection to this evidence and excluded it from the jury. It will not be necessary at this time to discuss that

question further as it will not arise in another trial of the case, unless the prosecution should repeat the same improper question. Likewise, it is not necessary to discuss other questions raised in the case which would probably not be repeated at another trial.

For the error set out in appellant's Bill of Exceptions No. 12, hereinabove discussed, the judgment of the trial court is reversed and the cause is remanded.