## Frick v. Commonwealth.

June 2, 1950.

Holland G. Bryan, Judge.

John D. Driskill for appellant.

A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, David R. Reed, Commonwealth Attorney, 2nd Judicial District of Ky., for appellee.

JUDGE LATIMER—Reversing.

In the early part of February, 1949, Boyd Allcock, apparently living with Marjorie Downing as his common law wife, brutally beat this paramour's little five year old son, Larry Downing, into insensibility, from which the lad died. It appears that Allcock and Marjorie Downing, and her child, were living in the home of

appellant, Allison Frick. Marjorie Downing and Allison Frick were present and saw the brutal beating. The injuries were so severe that it was necessary to remove the lad to the hospital. Whereupon, it was agreed among the three, Frick, Marjorie Downing, and Allcock, that they would tell that the child had fallen off the back porch on a rock and injured himself. Such information was given to the hospital. The doctor in charge of the boy at the hospital concluded that the boy couldn't have received these injuries merely by falling off the porch. He thereupon called Sheriff Graham and told him his reactions in the matter and suggested that an investigation be made. The Sheriff immediately commenced the suggested investigation. He apparently first contacted Marjorie Downing and some little time later the appellant. Each told the same story—that the boy had been accidentally hurt by falling off the back porch on a rock. It appears the Sheriff did not believe this story and persisted in his questioning when the mother of the child broke down and told him the truth as to what happened, and further said that the three of them had entered into an agreement to tell the fabricated story. On the following day Frick also acknowledged that he had misrepresented about the boy and that Allcock had beaten the child. Allcock was then arrested, tried for the murder of the child, found guilty, and given a sentence of life imprisonment. Marjorie Downing and Allison Frick were indicted for conspiracy to obstruct justice. They were tried, found guilty, and each given a fine of $50 and 12 months in jail. The defendant, Allison Frick, prosecutes this appeal, relying for reversal upon: (1) The court erred in overruling the demurrer to the indictment. (2) The instructions were erroneous. (3) The evidence was insufficient to submit to the jury and a peremptory instruction should have been given by the court to find the appellant not guilty. (4) Appellant abandoned the conspiracy, if any ever existed.

It is insisted that the indictment was demurrable because it does not state any public offense either at common law or under any statute. Both in 11 Am. Jur., Conspiracy, Section 21, and in 15 C. J. S., Conspiracy, Section 62, we find a discussion of conspiracy to obstruct justice. That matter is also discussed in Roberson's Criminal Law and Procedure, Section 213. In the section of Am. Jur., above cited, it is said:

"Any combination to accomplish the perversion or obstruction of the administration of justice in a criminal or civil proceedings is an indictable conspiracy. Thus, it is an offense to conspire to procure criminal process for wrongful purposes, to interfere with a sheriff or his deputy in the performance of his duty as an officer of the court, or to suppress or fabricate evidence."

The texts recognize such a conspiracy as we have here; that is, a conspiracy to accomplish a perversion or obstruction of the administration of justice. Consequently, we think the indictment good. That being the case, it follows that the instructions, as given following the indictment, also were good.

It is next urged that the evidence was insufficient to submit the case to the jury. It is difficult to ascertain just what appellant's attorney has in mind in this respect, unless he is insisting that, because at the time the investigation was being made by Sheriff Graham, the three were under suspicion, and, consequently, any one was not required to make any statement against his own interest; or that before any warrant was issued and while the matter was in the stage only of preliminary investigation, Marjorie Downing and appellant recanted their story about the accidental fall of the child and told the truth, upon which testimony Allcock was convicted and given the life sentence, thus abandoning any conspiracy, if any there was, and that by reason of either or both of above, they were entitled to a peremptory instruction. We need only look at the facts. Here were two people who sat by and watched Allcock brutally beat this child. Apparently there was no interference by either. After the child was taken to the hospital they did enter into agreement to tell any inquiring person that it was the result of an accident. The Sheriff, upon making his investigation, made inquiry of them and they carried into effect that agreement by first telling the Sheriff this fabricated story. True, they abandoned it later but the unlawful agreement was made and for a while carried out. We, therefore, conclude that appellant must fail in contentions 3 and 4.

There yet remains another ground not enumerated in the four above which seems to be somewhat hidden in the record and briefs. The Commonwealth took the position in the trial below that since Frick had pleaded

not guilty to the offense, it became necessary for the Commonwealth to prove how Larry Downing met his death, and in carrying out this purpose, introduced into evidence some pictures—rather gruesome pictures—of the condition of this boy. Appellant's attorney objected strenuously to the introduction of these pictures and filed in his motion and grounds for new trial the introduction of this incompetent evidence. But appellee says that this court should not consider that incompetent evidence because appellant has apparently abandoned same in his brief. We have carefully searched the brief and we have come to the conclusion that, although most awkwardly stated, appellant did not abandon this ground. He says: "It is urged, in view of the circumstances precedant to this trial, that is the inflammatory nature of the evidence of the murder trial, that it was grave error and a denial of a fair trial to deny a peremptory instruction in this case in view of the apparent prejudice and feeling in the community toward all of the persons attached to the circumstances surrounding the tragic death of the small child at the hands of a brutal murderer."

It does not require imagination to see the prejucial effect of the introduction of these pictures. Only recently in the ctse of Craft v. Commonwealth, 312 Ky., 700 229 S. W. 2d 65, a death penalty case, this court reversed because of introduction in evidence of pictures which were calculated highly to inflame a jury. Appellant was being tried for conspiracy to obstruct justice. The evidence on the former trial, wherein both Marjorie Downing and appellant admitted they agreed to tell the fabricated story first, coupled with the testimony of the Sheriff that they carried out that agreement to tell that the boy had been accidentally hurt, although they afterwards told the truth about the matter, was sufficient to take the case to the jury on the question of conspiracy. The gruesome pictures of the murdered lad had no place in this trial.

Consequently, the judgment must be reversed because of this highly prejudicial evidence.