[Crim. No. 82. First Appellate District.—March 3, 1908.]

## THE PEOPLE, Respondent, v. JOSEPH C. FOSSETTI, Appellant.

CRIMINAL LAW—MURDER—SUPPORT OF VERDICT IN SECOND DEGREE—QUARREL—INFERENCE OF PREMEDITATION.—Where it appears that after a quarrel between defendant and the deceased, who had been drinking, but had exhibited no weapon and made no threat against the defendant, defendant deliberately left the room, saying that he would "fix" deceased, and presently returned, and, without warning, fired the fatal shot, the jury had the right to infer that he left the room with the deliberate and willful intention of killing the deceased, and its verdict of murder in the second degree is sufficiently supported. It cannot be said, as matter of law, that the shot was fired upon a sudden heat of passion, and constituted only the crime of manslaughter.

ID.—PROVINCE OF JURY—INFERENCE FROM FACTS—APPEAL.—The question as to the sufficiency of the evidence to warrant a verdict, both as to the guilt of the defendant and as to the degree of his crime, where they have a right to draw an inference from the facts proved, is peculiarly a question for the jury; and with its determination it is not the province of the appellate court to "interfere."

ID.—EVIDENCE OF PHYSICIAN AS TO POSITION AND COURSE OF BULLET.—It was proper to allow a physician who had examined the wound and had extracted the bullet from the deceased to testify to the facts to show its position, the course taken by the bullet, and the place of entrance and exit.

ID.—COMMENTS OF DISTRICT ATTORNEY AS TO INSTRUCTIONS.—The district attorney in his argument might legitimately call the attention of the jury to the fact that instructions were prepared by counsel and often stated hypothetical circumstances and conditions, which made it necessary for the jury to look at them carefully and critically, if there was no intimation that they should disregard the instructions.

ID.—ASSIGNMENT OF ERROR AS TO INSTRUCTIONS REFUSED OR GIVEN.—Where counsel rely upon error on the refusal of the court to give

a requested instruction, they must state the instruction and point out the reason why they think the court erred in refusing to give it; and the same rule obtains in regard to the giving of an instruction to which objection is made. If this rule is not followed, the instruction given or refused will not be considered.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

S. J. Hinds, and Thos. D. Ingersoll, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

COOPER, P. J.—The defendant was found guilty of murder in the second degree by the verdict of the jury, and upon the verdict judgment was duly entered. His motion for a new trial having been denied, he prosecutes this appeal from the judgment and from the order denying his motion for a new trial.

The main point urged by the defendant is that the evidence shows that the crime was manslaughter and not murder. It appears from the evidence in the case that the defendant (who is sometimes referred to as Chip Moran), was in charge of a roadside house near Fresno; that one Ollie Leighton was living at the place, and one Hattie Russell, at the invitation of Ollie Leighton, was visiting the roadside house referred to; that Moseley, the deceased, was a friend of Hattie Russell, and called upon her at the roadside house while she was stopping there, and that he with her had partaken of a meal at the house; that on the date of the homicide, about 6 o'clock P. M., defendant and other persons returned to the roadhouse, and soon thereafter defendant went into the kitchen. Deceased went into the room of Hattie Russell. He had been drinking. Defendant was called into the room of Hattie Russell where deceased was, and deceased then stated that defendant had accused Hattie Russell of having been out riding with defendant, and stated to defendant that defendant had told him so and had made said accusation. Angry words ensued, during which time

defendant called Moseley a liar, and Moseley struck defendant on the cheek and knocked him over on the bed. Defendant then went out and procured a revolver, and came back into the room and fired the fatal shot. The transaction is thus stated by the witness Hattie Russell: "There was just one blow struck; there was nothing more happened in the way of their scuffling, striking, kicking or anything. When I got Barney [referring to Moseley] off we were at the foot of the bed there. Chip Moran got up from the bed on the side next to the door and went out. I don't remember whether he got up on his feet or his knees, because as soon as I pulled Barney up he got right up and got out. Chip [the defendant] said that he would fix him just as he was going out the door. Nothing happened before he came back. I was just talking with Barney Moseley, trying to keep the peace with him. We were standing by the bureau, and Chip came in, and I heard him coming around, and I shut the door, and he slammed it back and shot. He was down the hall from the back way when I heard him coming. He didn't say a word when he came back to the door and shot. The bureau was where it was shown there [referring to a diagram], and Barney was leaning on it when the shot was fired. Chip was in the door when he fired the shot. From the time Chip Moran went out of the door and says 'I'll fix you,' till the shot was fired was inside of a minute. When the shot was fired Barney fell, just slipping down from the bureau into a cramping position."

It is contended that the above testimony, although it does not show that the fatal shot was fired in self-defense, shows that it was fired during a sudden quarrel or heat of passion, and at most only constituted the crime of manslaughter. This contention cannot be maintained as a proposition of law. The deceased had been drinking. He had exhibited no weapon and made no threat toward the defendant. The defendant deliberately left the room, according to the testimony, after saying that he would "fix" deceased. He procured a pistol and returned, and without warning fired the shot that caused the death of Moseley. In such case the jury are the exclusive judges of the facts, and it is for the jury to say whether the killing was the result of malice and premeditation, or whether it occurred during a sudden quarrel or heat of passion. No definite time was necessary after de-

fendant was struck for his angry passions to cool. The jury had the right to infer when he left the room to procure his pistol that he did so with the deliberate and willful intention of killing deceased.

The question as to the sufficiency of the evidence and as to the degree of a crime, where the jury have a right to draw an inference from the facts, is peculiarly a question for the jury. With the determination of the jury it is not the province of this court to interfere. (*People* v. *Wright*, 4 Cal. App. 704, [89 Pac. 364]; *People* v. *Fitzgerald*, 138 Cal. 41, [70 Pac. 1014]; *People* v. *Buckley*, 143 Cal. 379, [77 Pac. 169].)

Dr. T. N. Sample was called as a witness on behalf of the people, and he testified to attending deceased as he was dying, and to the fact that he examined the body and the wound. He was asked by counsel for the prosecution to state the course of the bullet from the entrance to where it struck a bone where it was changed out of the course it had first taken. To this question the defendant objected, and now insists upon the objection. The witness was permitted to answer, and stated: "The bullet struck just on the anterior axillary line, that is, the straight up and down line from the point here, and passed inward and slightly backward and slightly downward, and struck the beginning of the lumbar vertebrae, and then was deflected slightly outward and downward. I got that bullet, and afterward handed it to the coroner at the coroner's inquest. In striking the arm the bullet made a hole underneath the skin but not into the muscle. The wounds mentioned are the only ones I found on the body, and I found but one bullet."

It was not error for the court to permit the witness to answer the question. The witness was not asked to give his opinion as to the position the person must have been standing in at the time he was shot with relation to the deceased, and therefore the question did not come within the ruling of *People* v. *Smith*, 93 Cal. 445, [29 Pac. 64]. The object of the question was to show the position of the wound, the course taken by the bullet, and its place of entrance and exit, so as to show the jury the facts.

It is further claimed that it was error in the court to refuse to strike out some remarks made by the district attorney in his argument in regard to the instructions that would

be handed to the jury in the case. The argument of the district attorney upon this point was to the effect that instructions were prepared by counsel, and often stated hypothetical circumstances and conditions, which made it necessary for the jury to look at them carefully and critically. But the district attorney did not state that the jury must disregard the instructions, and we do not think that he went beyond the scope of his right to state, by way of argument and illustration, his views of the case and the manner of instructing the jury. The remarks do not come within the reason of the rule given in the various cases in which remarks of district attorneys have been held to be error.

Defendant finally claims that ''an examination of the instructions asked for on behalf of the defendant and refused by the court will convince this court that there seems to be a steady pressure in the lower court to bar out any verdict of manslaughter or acquittal. If any of the instructions asked for by the defendant were refused on the ground that they had already been given, that reason should have been given by the court. The record shows no such compliance with the law by the court, and it is therefore error.''

This is not a sufficient assignment of error, in the giving or refusing of an instruction or of instructions, to justify us, under the well-settled rule, in examining the instructions given or refused. It is due to the court that, when counsel rely upon error in the refusal to give an instruction, they should state the instruction, and point out the reasons why they think that the court erred in refusing to give it; and the same rule obtains in regard to the giving of an instruction to which objection is made. (*People* v. *Cebulla,* 137 Cal. 315, [70 Pac. 181] ; *People* v. *Munroe,* 138 Cal. 99, [70 Pac. 1072] ; *People* v. *Woon Tuck Wo,* 120 Cal. 298, [52 Pac. 833].)

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.