## Craft v. Commonwealth.

April 28, 1950.

Loraine Mix, Judge.

James A. Hubbs and John T. Fowler for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

STANLEY, COMMISSIONER—Reversing.

The death penalty has been decreed for the appellant, Jake President Craft, for the crime of robbery committed with the use of a deadly weapon. KRS 433.140.

The case is unusual in that there is no contradiction in the evidence. The Commonwealth proved a customer entering a liquor store met two young Negros coming out. She found the clerk, Milton Zimmerman, in a back room seriously wounded. The police soon arrived and quickly arrested the men not far away. They had money, whiskey and a wedding ring taken from Zimmerman and the store. The men readily admitted they were the guilty ones. Later Craft signed a confession giving a detailed account of the circumstances. This was read to the jury. Other proof connected him and his companion with the crime. The defendant's testimony was in all respects like his statement. It was in substance that he and another Negro boy, Albert Shelkels, started hunting on the morning of December 23, 1948, and stopped at the

liquor store for cigarettes. Craft went in alone and was followed by Shelkels with a shotgun. Upon entering, Shelkels told the clerk, Zimmerman, "This is a stick-up" and before he could say anything, Shelkels shot him. The defendant testified that there had been no agreement or prearrangement to rob the place and he was surprised when Shelkels came in. He was excited and, not knowing what he did, dragged the wounded man to the back of the store. A customer came in, and he waited upon him. Then he went back to the man and "the idea struck me of taking the money." He and Shelkels then took the money out of the cash register and several bottles of whiskey from the shelves. Shelkels went to the back room and got Zimmerman's wallet and ring. He proved he had borne a good reputation.

The Commonwealth had quite satisfactorily and sufficiently proved the defendant's guilt; also, that Zimmerman had died without having regained consciousness. A police photographer presented several pictures of the scene of the robbery, of this defendant and his companion, and the taxicab in which they were arrested. Over objection, the officer filed a large photograph of the upper part of the dead man's body which showed stitches all the way across the front and down the middle of the torso. It is ghastly. The court gave this admonition: "It is competent and may be considered by you for the purpose of establishing the identity of the deceased, and likewise for the purpose of showing the exact location of the gunshot wound causing the death in this case. There are a great many stitches taken under the neck of the deceased and down through the body, but that has nothing to do with this case; they were all made on the post-mortem examination and made after his death, and you will not consider them at all."

Evidence of the identity of the victim and all the facts necessary to convict the defendant of the crime for which he was being tried, namely, robbery, was within the possession of the Commonwealth and was introduced following the filing of the photograph. The issues were whether the defendant had committed the crime of robbery and in doing so he or his companion had used the shotgun, and if so, whether his punishment should be to forfeit his life or spend it in prison, according to the terms of such a sentence. The Commonwealth had sure and certain proof of guilt, so the case was really re-

702

solved into the single question of the degree of punishment. What was the object of having the jury examine this picture of the mutilated dead body? Was it for identification of the victim? We doubt it. The defendant was not being tried for murder. The introduction of the irrelevant and unnecessary picture was to accentuate and magnify the murder. It was impressive and inflammatory. It was calculated to, and no doubt did, incite sympathy for the man who had lost his life and indignation and wrath against the man who had taken that life. This surely put into eclipse the charge upon which the defendant was being tried. It is one of the inalienable rights of the humblest citizen, vicious and insubordinate though he be, to be tried for one crime at a time. The fact that the man was killed could scarcely have been kept out of the case, for it was part of the crime, McPeak v. Commonwealth, 308 Ky. 29, 213 S. W. 2d 447, but it certainly should not have been emphasized. We have often commented upon the unfairness and injustice of introducing gruesome photographs that serve no useful or proper purpose, but frequently held their introduction could not be deemed prejudicial under the particular circumstances. Waters v. Commonwealth, 276 Ky. 315, 124 S. W. 2d 97; Calhoun v. Commonwealth, 301 Ky. 789, 193 S. W. 2d 420. But this is different from other cases, for the crime for which the man was being charged was not murder. For this error of introducing the photograph, the judgment must be and it is

Reversed.