## KIEFER v. STATE OF INDIANA.

[No. 29,580. Filed November 18, 1958. Rehearing denied
December 29, 1958.]

*Barrie C. Tremper* and *Tremper & Kenny*, of Fort Wayne, for appellant.

*Edwin K. Steers*, Attorney General, and *Owen S. Boling*, Deputy Attorney General, for appellee.

BOBBITT, C. J.—Appellant was charged by indictment with the murder of his wife, tried by jury, found guilty of murder in the first degree and sentenced to death in the electric chair.

The uncontradicted evidence shows that on the morning of January 15, 1957, while appellant's wife was in the basement of their home doing the family laundry, he went into the basement to discuss with her their financial problems and an argument followed, during

which appellant hit his wife. Following her resistance he threw her to the floor and began beating her with a hammer. Their small daughter, hearing the commotion in the basement, ran downstairs and attempted to stop her father from beating her mother, whereupon appellant struck the child with the hammer. He continued to strike both with the hammer and when they were "knocked out" appellant then went upstairs to the second floor and got a hunting knife and returned to the basement where he slashed the bodies of both his wife and daughter, causing their death.

Appellant admits these acts. However, we do not pass upon the guilt or innocence of a defendant. Our duty is to see that he has a fair trial. Even the perpetrator of a crime as heinous as that portrayed by the evidence in this case, is entitled to a fair trial and the protection of his rights as an American citizen. It is with this thought in mind that we approach the questions presented by this appeal.

Only Specifications 1 and 4 of the motion for a new trial are discussed in appellant's brief and all others are deemed waived.

Appellant asserts that (1) the trial court erred in admitting into evidence, over his objections, State's Exhibits Nos. 8, 10, 11, 12, 13 and 14; and (2) the evidence is not sufficient to show malice and premeditation.

These propositions present four questions for our consideration; and, notwithstanding the result we have reached, all will be considered because some are likely to arise on a retrial.

*First:* Exhibit 8 is a photograph of the child lying on the basement floor near the steps and showing large knife wounds on her face and body. Appellant asserts

that such exhibit was "not material or relevant to the issues before the Court," since he was on trial for the death of his wife and not for the death of his child.

As a general rule a photograph that is "entirely irrelevant and immaterial to any issue in the cause and which is of such a character as to divert the ■ minds of the jury to improper or irrelevant considerations should be excluded from evidence." 20 Am. Jur., Evidence, §729, p. 609; Underhill's Cr. Evidence, 5th Ed., §117, p. 16 (1958 Supp.).

However, this rule is not applicable to State's Exhibit No. 8 because under the evidence in the record here the killing of the child was part of the *res gestae*. See: 22 C. J. S., Criminal Law, §662, p. 1044.

The rule by which we must be guided in our ■ consideration of this question is stated in 22 C. J. S., Criminal Law, §663, p. 1049, as follows:

"Evidence of another and distinct crime is admissible where it was committed as part of the same transaction and forms part of the res gestae." See also: *Starr* v. *State* (1903), 160 Ind. 661, 67 N. E. 527; *Gallaher et al.* v. *The State* (1885), 101 Ind. 411, 412; *Harding* v. *The State* (1876), 54 Ind. 359, 366.

This court was faced with a similar question in *Starr* v. *State, supra,* where appellant was charged with assault and battery with intent to murder William Rebelskey, one of two brothers, William and Otto, whom he had overtaken and struck with a hatchet while they were on their way to a nearby town.

The court there, over the objections of appellant, permitted a witness to testify that he saw both brothers just after the attack, one (Otto) lying on a snowdrift and the other (the prosecuting witness William) standing near their buggy with a cut in his temple. Appel-

lant contended that the evidence relating to Otto was incompetent. At page 669 of 160 Ind. this court said:

> "It was a necessary part of the description of the situation as it appeared a few moments after the cutting. The wounding of the two men by the appellant occurred in the same encounter, was done with the same weapon, and was almost simultaneous. While the attack upon each may have constituted a separate offense, the cutting of each of the injured persons was in one and the same transaction, and constituted a part of the *res gestae.*"

The situation in that case seems to us to be similar to that pertaining to the introduction of the photograph of the child in the case at bar. The killing of the child herein was simultaneous with the attack on the wife; it was done with the same weapon; and it sprang out of, and was a result of the encounter between appellant and his wife. Exhibit No. 8 was, therefore, properly admitted.

*Second:* Exhibits Nos. 9, 10, 11 and 12 are photographs of the wife's body taken from different angles at the scene of the crime. Even though these photographs representing Exhibits Nos. 10, 11 and 12 may have been, to some degree, repetitious and cumulative, and are gruesome in character, they serve to elucidate and explain relevant oral testimony given at the trial and they were properly admitted for the purpose of showing fully the scene of the crime, the nature of the wounds of the victim, and the condition of the basement immediately after the crime was committed. Cf: *Davidson* v. *The State* (1893), 135 Ind. 254, 259, 34 N. E. 972.

*Third:* Was the evidence sufficient to show malice and premeditation?

Malice may be presumed from the intentional use of a deadly weapon in such a manner as is likely to cause death. *Myles* v. *State* (1955), 234 Ind. 129, 133, 124 N. E. 2d 205 (Cert. denied, 349 U. S. 932) ; *Everett* v. *State* (1935), 208 Ind. 145, 149, 195 N. E. 77.

"Premeditation is an intent before the act of killing. It means entertainment by the mind of a design to kill, and is often defined as 'thought of beforehand,' . . ." 1 Warren on Homicide, §70, p. 293. See also: *Koerner* v. *The State* (1884), 98 Ind. 7, 8-10.

This court recently said in *Heglin* v. *State* (1957), 236 Ind. 350, 354, 140 N. E. 2d 98, 100:

"Premeditation by its very nature is not instantaneous, but requires some time interval. . . . It is of the very essence of the crime that there should be time and opportunity for deliberation or premeditation after the intent to kill has been formed in the mind."

No appreciable length of time is required to exist for premeditation.

"It is sufficient if defendant having time to think weighs the purpose to kill another long enough to form and does form a design to do so, if at a subsequent time, no matter how soon or how remote, the design was executed." 1 Warren on Homicide, 78, p. 381. See also: *Fahnestock* v. *The State* (1864), 23 Ind. 231, 263; *Aszman* v. *The State* (1890), 123 Ind. 347, 351, 352, 24 N. E. 123, 8 L. R. A. 33; *Everett* v. *State, supra* (1935), 208 Ind. 145, 149-150, 195 N. E. 77.

In *People* v. *Fossetti* (1908), 7 Cal. App. 629, 95 Pac. 384, during the course of angry words, in the room of a mutual friend, appellant called the deceased a "liar." Deceased then struck the appellant on the cheek and knocked him over on the bed. Appellant then left the

room, got a revolver and returned and shot the deceased. An eye witness, who was also in the room at the time, testified that as the appellant went out the door he said to the deceased, "I'll fix you." This witness further testified that from the time the appellant went out the door and said, "I'll fix you," until the fatal shot was fired was "inside of a minute." It was there contended that the evidence showed that the fatal shot was fired during a sudden quarrel or heat of passion, and, at most, only constituted the crime of manslaughter.

At page 386 of 95 Pac. the Court of Appeal said:

"The defendant deliberately left the room, according to the testimony, after saying that he would 'fix' deceased. He procured a pistol and returned, and, without warning, fired the shot that caused the death of Moseley. In such case the jury are the exclusive judges of the facts, and it is for the jury to say whether the killing was the result of malice and premeditation, or whether it occurred during a sudden quarrel or heat of passion. No definite time was necessary after defendant was struck for his angry passions to cool. The jury had the right to infer when he left the room to procure his pistol that he did so with the deliberate and willful intention of killing deceased."

We think the circumstances in the case at bar are analogous to those in *People* v. *Fossetti, supra*. Applying the reasoning in that case to the facts in the case at bar leads us to the same conclusion.

The appellant herein left the basement, went upstairs to the bedroom on the second floor where he got his hunting knife. He then returned to the basement where he stabbed and cut, first the body of his wife, then that of the little girl.

A police officer testified, as a witness for the State, as follows:

"I asked him [appellant] why he got the knife, and he replied that he wanted to make sure they were dead."

A deputy coroner of Allen County testified that he conducted an autopsy upon the body of appellant's wife from which he determined that the cause of death was "due to multiple lacerations from stab wounds about the chest and abdomen."

It was for the jury to decide whether the killing in this case was the result of premeditated malice or whether it resulted from a sudden quarrel or heat of passion; *Booher* v. *State* (1901), 156 Ind. 435, 448, 60. N. E. 156, 54 L. R. A. 391; and if there is sufficient evidence of probative value to support the verdict of the jury it will not be disturbed on appeal.

The evidence abovementioned was sufficient to support an inference by the jury that appellant, when he left the basement and went to the second floor to get his hunting knife, did so deliberately and with the premeditated and malicious intention of killing his wife, the deceased herein.

*Fourth:* After the State had introduced four photographs, Exhibit No. 9 without objection, and Exhibits Nos. 10, 11 and 12 over the objection of appellant, that portrayed the nude body of appellant's wife lying in the basement at the scene of the crime, it then introduced, also, over the objection of appellant, two photographs of deceased's nude body taken as it lay on a slab in the mortuary at the time an autopsy was performed. The first of these photographs, being State's Exhibit No. 13, shows the hands of a doctor and nurse with instruments, inside the deceased's chest. The other, State's Exhibit No. 14, is a photograph of deceased's nude body, lying face up on a slab and showing all of the knife wounds, plus additional incisions made in the

body by the doctor in performing the autopsy. This photograph showed the body as it appeared after the doctor had finished with the autopsy and not as it appeared in the photographs[1] taken at the scene of the crime.

All of the abovementioned photographs are gruesome and shocking and are clearly of a prejudicial character. The general rule as to the right to introduce such photographs is as follows:

As stated in 2 Wharton's Criminal Evidence, 12th ed., §687, at pages 658-659, it is:

"Photographs are admissible to show the body of the victim; to establish the corpus delicti; to show the position of the parties to the crime, ■ the position of the victim's body, the condition of the victim, the wounds of the victim, and the cause of death; . . ."

Underhill's Criminal Evidence, 5th ed., §117, *supra*, states that photographs which go to illustrate any fact or shed light on an issue, or are relevant to ■ describe the person, place or thing involved, are admissible. (Page 213.) They are not inadmissible merely because they are shocking, horrible or tend to arouse passion or prejudice, (page 222) but a "photograph serving only, or primarily, to arouse passion or prejudice will not be received . . ." (Page 16, 1958 Supp.).

23 C. J. S., Criminal Law, §852, pp. 53, 54, states:

"*When it is material to the issues,* a photograph of deceased, or of his body or parts thereof, is admissible in a prosecution for homicide, although the picture has a gruesome or shocking aspect, and tends to excite the passion or prejudice of the jury; but such photographs should be excluded if they are unnecessary and introduced for the purpose of

1. State's Exhibits Nos. 9, 10, 11 and 12.

inflaming the jury's emotions. It is within the discretion of the trial court to determine whether or not such a photograph is admissible." (Our italics.)

The leading case in Indiana on the admission of photographs is *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79. In this case photographs of the taxicab in which the crime was committed and of the decomposed body of the deceased, including a photograph of the skull with the skin and flesh removed, were held admissible on the ground that the facts shown had been described, without objections, and that the photographs supplemented oral testimony, and on the further ground that the photographs tended to give a more accurate description of the wounds and the severity of the blows, and for this reason were relevant even though some of them may have been repulsive and gruesome.

This court in *Hawkins* v. *State, supra* (1941), 219 Ind. 116, at pages 127, 128, 37 N. E. 2d 79, 83, said:

"Cited under this text[2] are numerous criminal cases holding proper the admission of photographs picturing the scene of the crime, objects used in its commission, the body of the victim and other details enabling the jury to visualize what actually occurred. Their relevancy, it seems to us, is determined by the inquiry as to whether or not a witness would be permitted to describe the objects photographed." See also: *Turrell* v. *State* (1943), 221 Ind. 662, 670, 51 N. E. 2d 359; *Hicks* v. *State* (1938), 213 Ind. 277, 288, 11 N. E. 2d 171 (Cert. denied 304 U. S. 564); *Wahl* v. *State* (1951), 229 Ind. 521, 532, 98 N. E. 2d 671.

In our opinion none of the foregoing Indiana cases support the position of the State as it relates to the

---

2. 3 Wigmore on Evidence, 3d ed., §792, p. 178; 23 C. J. S., Criminal Law, §852, p. 51.

admission of Exhibits Nos. 13 and 14, and they have no application here because of the difference in the circumstances under which the photographs were made and the purposes for which they were introduced.

We recognize that photographs of a corpse are admissible in evidence, even though they portray a gruesome spectacle and may arouse passion and resentment against the defendant in the minds of the jury, *but* such photographs must be *material* and *relevant* and *tend to prove or disprove some material fact in issue.* 159 A. L. R., Anno. 1413, at page 1420.

Photographs which show the body of a deceased during and after the autopsy was performed have been held inadmissible on the theory that they serve no material purpose and their only value is to arouse the emotions of the jury.

In *The People* v. *Jackson* (1956), 9 Ill. 2d 484, 138 N. E. 2d 528, the State introduced a photograph of the deceased which showed some of the sutures made in the performance of the autopsy. The Supreme Court of Illinois said that the only use of the photograph from the State's standpoint was to arouse the emotions of the jury so that they would administer a more severe penalty, and held that the admission of such a photograph was improper.

In *State* v. *Bischert* (1957), 131 Mont. 152, 308 P. 2d 969, in a trial on the charge of manslaughter for failure to provide food for a five month old child causing death by starvation, the State introduced three photographs of the body of the baby and a colored slide taken after the post-mortem. These were used in connection with the doctor's testimony. The doctor stated that he did not need the photographs to explain his

findings, but said that they were helpful. Over objections of appellant's counsel, the prosecuting attorney dwelt in detail on each of the pictures.

The Supreme Court of Montana there held that the photographs were inflammatory, ghastly and gruesome and calculated to arouse the sympathies or prejudices of the jury; that they served no material purpose, and at page 973 of 308 P. 2d, said:

"When the purpose of an exhibit is to inflame the minds of the jury or excite the feelings rather than to enlighten the jury as to any fact, it should be excluded." Citing authorities.

In *McKee* v. *State* (1947), 33 Ala. App. 171, 31 So. 2d 656, 662 (Cert. denied 249 Ala. 433), McKee was tried and convicted of murdering his wife and during the course of the trial the State introduced pictures of her body cut open showing a large scar in the spleen which the State's Toxicologist testified was caused by trauma. The Court of Appeals of Alabama held this particular picture inadmissible because it not only showed the scar in the spleen but also showed the open operation made by the autopsy surgeon. This rendered the whole picture extremely gruesome and not of any particular value in solving the question in issue. At page 661 of 31 So. 2d, the court said:

"Where, as in this case, massive mutilation of a body is necessary to expose such injured organ, fairness to an accused demands that only so much of the surrounding dissected body area be pictured as is reasonably necessary to furnish visual aid to the jury in determining the question of facts presented."

In *Craft* v. *Commonwealth* (1950), 312 Ky. 700, 229 S. W. 2d 465, the appellant was convicted of armed robbery and sentenced to death. After the robbery appellant Craft was apprehended, signed a confession

giving a detailed account of the circumstances, and this, and other testimony, conclusively showed his guilt. The police introduced in evidence several pictures of the scene of the robbery and of Craft and, over objection, a large photograph of the upper part of the dead man's body which showed stitches all the way across the front and down the middle of the torso. The court instructed the jury that the picture was competent only for the purpose of identifying the deceased and showing the location of the gunshot wound causing his death, but the stitches under his neck and down through his body had nothing to do with the case, but were made on a post-mortem examination. In holding that the Commonwealth had certain proof of the guilt of the accused, the Court of Appeals of Kentucky reversed the judgment because of the introduction of the picture of the deceased saying that it was ghastly, irrelevant and unnecessary and calculated only to accentuate and magnify the crime.

In *Poe* v. *Commonwealth* (1957), Ky., 301 S. W. 2d 900, the appellant was charged with manslaughter and upon her conviction she appealed, primarily because the Commonwealth introduced photographs of the body of the victim and of the shirt worn by him at the time he was shot. Defendant objected and made the formal admission that the deceased came to his death as a result of a gunshot wound which made a hole through his body, one on the outside of the left breast, and the other on the right shoulder, and that he fell in his driveway near the well.

The Commonwealth's Attorney refused to accept the admission and proceeded with the introduction of the shirt and the photographs.

In holding that the admission of these photographs

and the shirt was error, the Court of Appeals of Kentucky, at page 902 of 301 S. W. 2d, said:

"The introduction of gruesome photographs, bloody clothing, and the like is almost inevitably accompanied by the risk of inflaming the minds of the jurors to the prejudice of the accused. Where necessary to prove a contested relevant fact, their probative value is usually held to outweigh any possible prejudicial effect they might have." See also: *Poe* v. *Commonwealth* (1958), Ky., 314 S. W. 2d 199.

State's Exhibits Nos. 13 and 14 show nothing and establish no facts not shown by State's Exhibits Nos. 9, 10, 11 and 12. State's Exhibit No. 13, as above stated, shows the hands and instruments of the surgeon inside the deceased's chest and State's Exhibit No. 14 shows additional incisions made by the doctor who performed the autopsy. Both these photographs, and especially State's Exhibit No. 13, are very gruesome, revolting and inflammatory.

These exhibits were not in any way necessary to establish the *corpus delicti*. They did not show the position of the parties to the crime nor correctly show the wounds of the victim or the cause of her death. They did not "shed any light on any issue" or enlighten the jury on any fact in issue, but served only to arouse passion and prejudice.

These exhibits were calculated to, and in our opinion did, only incite sympathy for the woman who lost her life and indignation against the appellant herein. They were unnecessary and were introduced only for the purpose of inflaming the jury's emotions.

It is the duty of the State to present relevant and material facts to the jury to stimulate their mental processes so that they might thereby arrive at the guilt or innocence of the accused. But to introduce

evidence only for the purpose of arousing the passions and prejudices of the jury, in such a manner as to cause them to abandon any serious consideration of the facts of the case and give expression only to their emotions, is clearly outside the scope of such duty and a violation of an accused's right to a fair trial.

It is a part of our American heritage that every defendant, regardless of what he may be accused, and no matter what the public feeling may be against him, is entitled to a fair trial, with the introduction against him only of evidence which is sanctioned by established law.

State's Exhibits Nos. 13 and 14 should have been excluded, and the trial court abused its discretion in permitting them to be introduced and exhibited to the jury.

For this reason the judgment of the trial court must be reversed.

Judgment reversed with instructions to the trial court to grant appellant's motion for a new trial.

Emmert, J., concurs.

Landis, J., concurs with opinion.

Achor, J., dissents.

Arterburn, J., dissents with opinion.

### CONCURRING OPINION

LANDIS, J.—I concur in reversal of judgment for the reason that the admission of photographs which were exhibits 13 and 14 (showing the hands and instruments of the surgeon inside decedent's chest, and additional incisions and stitches by the doctor performing the autopsy) contained foreign and irrelevant matter of a gruesome and inflammatory nature not properly

admissible in this case, and was therefore reversible error.

### DISSENTING OPINION

ARTERBURN, J.—I cannot concur in the majority opinion because I feel it overrules and repudiates all the principles of law decided by this court in *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79, and the line of cases upon which it is based. Practically every point considered and decided in the majority opinion in reversing the trial court was disposed of and decided to the contrary in that case.

The primary issue in this case is whether or not certain photographs, which showed an autopsy performed upon the murdered victim's body, revealing in more detail the depth, size and nature of the many slashing wounds which were inflicted, were competent and admissible in the evidence in the murder trial.

We have to go to the transcript in search of the objections made to the photographs since they are not contained in the motion for new trial or briefs. The statement there is:

> "The defendant objects as being highly inflammatory, repetitious, serve no useful purpose, inflaming the jury, prejudicial against this defendant."

No objection is raised in the record or briefs in this case that the photographs are inaccurate or not a true representation. Yet the fact that the pictures show one incision, which may have been made and sewed by the physician performing the autopsy, appears to be one of the reasons the majority opinion offers as to why the photographs are not admissible. Such an objection was not raised in the trial court and was not presented on appeal.

Nevertheless such incision which is hardly to be seen in the photographs, does not on the merits of the question make the photographs inadmissible. As a general rule they are admissible even though some changes have occurred in the object pictured or the surroundings, if they do not serve to distort the basic facts portrayed and the jury is informed as to such changes. The Hawkins Case, *supra* makes this crystal-clear. In that case a photograph was taken of the murdered victim's decomposed body a number of months after he was killed. There was a change in the seasons, the foliage and in other details, yet the court said:

"Appellant's objection that the photographs were not made at the time the crime was committed if taken at its face value would exclude practically all photographs, for few crimes are publicized by the presence of a photographer."

Numerous Indiana cases are cited there to support this proposition, particularly when an explanation is made to inform the jury so that it may take such matter into consideration in viewing the picture. In the case before us the physician performing the autopsy explained that only *one* incision was made and on the photograph this appears to be sewed together. I do not think that the jury was misled or prejudiced by the appearance of this single incision which is hardly discernible in the picture. "Nor does the fact that conditions were somewhat changed before the photograph was taken render the photograph inadmissible if the changes were not material." 20 Am. Jur. Evidence, sec. 731, p. 611.

The purpose of an autopsy is to discover the *cause of death*. One of the issues in a murder case is the cause of death. If the physician's testimony in his technical language is competent for the jury to hear

as to that issue, certainly a picture which is more revealing and realistic would give a jury a much better idea as to how the death occurred and what the size and character of the wounds were. The majority opinion says the exhibits "were unnecessary." The only limitation on repetitious evidence is the discretion of the trial judge.

Again we refer to the Hawkins case, which says:

> "In this case there was no objection to detailed testimony of all the facts shown by the photographs. But this in itself seems to be a ground urged for their exclusion, that is, the lack of necessity for their introduction. Ordinarily a party is not limited in presenting to the jury the facts upon which he relies. More than one witness may testify to the same fact. We see no reason, therefore, why a witness may not describe in words what he saw and also supplement his testimony with photographs, which frequently give the jury a more accurate picture than the verbal description."

The law in Indiana has always been that if oral testimony regarding a fact is given, a photograph revealing the same facts is admissible. *Hawkins* v. *State, supra* (1941), 219 Ind. 116, 37 N. E. 2d 79; *Wahl* v. *State* (1951), 229 Ind. 521, 98 N. E. 2d 671; *Hicks* v. *State* (1938), 213 Ind. 277, 11 N. E. 2d 171, 12 N. E. 2d 501; *Thrawley* v. *State* (1899), 153 Ind. 375, 55 N. E. 95.

One can hardly conceive of a more gruesome and disagreeable picture than that of a decomposed body of a victim lying in weeds with the skull and bones showing, as was true in the Hawkins Case, yet the same objection was made there as here, namely that it was introduced "for the purpose of prejudicing the jury." In that case the court, citing and analyzing numerous authorities including Wigmore on Evidence, held the objection not valid and said:

"We can think of details that might legitimately have been told by witnesses that are not shown by either Exhibit 12 or 24. The stench of human flesh putrefying in the weeds under a hot May sun can be described but not photographed. In fact the oral testimony in this case paints a picture just as repulsive as those shown by the photographs. They confirm, perhaps without adding, details, the bound hands, the cracked skull, which it was proper to relate to the jury. The extent of the head injury was material for appellant in his confession sought to leave the impression that his striking the driver of the taxicab on the head with a lead pipe was an attempt to save him from being shot by his confederate. The photograph of the skull gave the jury an accurate picture of the jagged hole and radiating cracks, indicating not a mild knockout tap but a violent blow."

The mere fact that evidence is prejudicial to a defendant does not, by reason thereof, make it incompetent or inadmissible. *The fact is, all evidence which is relevant and presented by the State in a criminal prosecution is prejudicial to a defendant.* It is only when the evidence is irrelevant, regardless of whether prejudicial or not, that it becomes inadmissible.

"When otherwise admissible, it is no objection that a photograph is gruesome, or likely to inflame or prejudice the jury. A photograph otherwise admissible is therefore not to be excluded even though it shows a garrotted child with his hands and feet cut off to prevent identification, or the naked or decomposed body of the victim." 2 Wharton's Criminal Evidence, pp. 654-655.

"Where they are otherwise properly admitted and have a reasonable tendency to prove or disprove some material fact in issue, or shed some light upon some material inquiry, photographs of a corpse are admissible in evidence even though they portray a gruesome spectacle and may tend to arouse passion and resentment against defendant in the minds of the jury." 159 A. L. R. p. 1420. Ewbank's Indiana Criminal Law, Symmes Ed.,

Vol. I, sec. 395, p. 246; Underhill's Criminal Evidence, 5th Ed., sec. 117, p. 212, 222.

In 159 A. L. R. p. 1414, it is said that so long as such photographs are relevant, they are admissible, even though they may be repulsive or gruesome in effect. In part it says:

"The generalizations above referred to have been specifically applied with respect to homicide cases involving the admissibility in evidence of photographs of the corpses of the victims of the homicide or of various parts of their bodies, in which it was held that such photographs were admissible in evidence for various purposes, such as showing the nature and location of the wounds or the position of the body, as well as to corroborate the prosecution's theory as to the motive prompting the infliction of the lethal blow or to refute defendant's plea of self-defense, to prove the identity of deceased, etc., all of which will be discussed in more detail in other subdivisions of this annotation."

The doctor who performed the autopsy was also the deputy coroner. He referred to the pictures taken at the mortuary, to which objections were made. He testified that there were no observable blows or cuts about the head of the wife except one, which was not fatal; that the cause of death was multiple lacerations, stabs and cuts about the breast and abdomen. The pictures all show the wounds. The doctor, in one picture, with instruments, shows the depth of the major wound. Referring to these exhibits he testified in part:

"A. There was an extensive laceration crossing the chest and pentrating the chest cavity, cutting through some of the ribs on the right and left chest cage.

"Q. When you conducted your examination in that area, did you have to make any incisions or anything like that to examine any of the vital organs?

"A.  It wasn't necessary to make a further incision because the laceration was already so deep that the organs were laid open.

"Q.  When you first saw the body for the post mortem, the chest area was laid open to the extent that you could examine those vital organs without any further incision by you. Is that true?

"A.  That's correct.

"Q.  In the other photograph there is shown the heart area, I believe, and there are several instruments in that photograph?

"A.  This photograph shows the chest cavity opened, with a scalpel directed towards the penetrating, or perforated, rather, wound in the left ventricle of the heart.

"Q.  About how long or big was that heart wound?

"A.  About an inch or an inch and a half long.

"Q.  Would a wound of that nature cause death?

"A.  That's correct."

These pictures are relevant to the testimony of the Doctor. The fact that they prejudiced the defendant would naturally follow and does not make them incompetent for that reason.

A defendant, because he has committed a horrible and particularly vicious crime, has no constitutional right to keep such facts from the jury which is trying him for the crime. All such evidence goes to the question of intent, motive, premeditation, and sanity which was in issue in this case, as well as the penalty to be inflicted.

"It will be borne in mind that by statute the burden of fixing the penalty in this case was upon the jury. The right of a jury to hear evidence in aggravation or mitigation of an offense was discussed in the case of *Kistler* v. *State* (1876), 54 Ind. 400, 403, 404." *Blue* v. *State* (1946), 224 Ind. 394, p. 402, 67 N. E. 2d 377; *Hawkins* v. *State, supra* (1941), 219 Ind. 116, 37 N. E. 2d 79.

In this case the stab and slashing wounds which were inflicted upon the bodies of both the wife and little daughter at the same time were extremely violent and horrible. That was part of the crime committed and was part of the res gestae. The character of the injuries was relevant in determining the extent and nature of the deadly attack on his wife and child. The evidence shows he first stripped the clothing entirely from his wife's body. The evidence further shows he had not been drinking and was sane.

If pictures of true conditions may be excluded solely because they are shocking and gruesome, then such a rule would logically apply to any other evidence, although relevant, merely because it also upset or shocked the feelings of a jury. This rule can not be limited merely to pictures.

If whether or not evidence arouses the prejudice and emotions of a jury, regardless of its relevancy, is to be the standard of admissibility, then the fact that the victim was his wife; that she was crying when her husband first saw her in the basement the morning of the crime; that he stripped her clothes from her before he killed her; that the little daughter interfered, saying "No, daddy, no," all should have been excluded, because such evidence tends to arouse the passions and emotions of a jury and does not directly prove he killed her. Likewise, evidence of all the blows struck except the fatal one should have been excluded, as well as pictures of such wounds, on the same reasoning. We could go on *ad absurdum*, until all the realism of the fatal events has been excluded from the jury except the fatal blow.

In the Hawkins Case an attempt was made by the defendant to admit the death was caused by a blow

(the *corpus delicti*) in order to prevent the State from proving the nature of the violence and the viciousness of the acts of the defendant in the horrible crime he committed. The contention was made there that it was not "necessary" for the State to introduce the photographs, just as in the majority opinion it is said, "they were *unnecessary* and were introduced only for the purpose of inflaming the jury's emotions." [Our italics.] This court in that case disposed of that question by saying that the defendant can not deprive the State of the right to show the dreadful and shocking acts which the defendant employed, since it is a matter for the jury to take into consideration in fixing the penalty. We said:

"We have read carefully all the evidence and are satisfied that the jury could reasonably have reached no other conclusion as to guilt, though the penalty to be inflicted doubtless depended in some degree upon *emotional reaction to the evidence.*" [Our italics.]

That case cites with approval 9 Wigmore on Evidence, 3rd Ed. sec. 2591, p. 589:

"Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate *moral force of his evidence*; furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations (especially in criminal cases), so as to be technically but not practically a waiver of proof . . ."

Some may say such exclusions create a "fair" trial. It is neither fair to the defendant nor the State representing the general public. Such a rule cuts both ways. There are times when emotional factors create extenuating circumstances and the jury has the right to get a true and complete picture of all the facts which go

to make up the alleged crime. That is the purpose and reason for a jury in a trial.

Sympathy for the guilty and indifference for the victim (present and future ones) of crimes are far too common. It encourages the opinion that the purpose of the rules of evidence is to show mercy towards those guilty of crimes and give them a sporting chance to escape by artificially handicapping the prosecution for crimes. On the contrary, the object of the rules governing a criminal trial is to reveal, so far as constitutional safeguards will permit, the actual facts to the jury that are relevant to the guilt or innocence of the defendant, the severity of the crime, as well as the punishment to be imposed if guilty.

If an accused created the "horrible sight" constituting the crime, the jury should know all about how terrible it was. Society owes him no protection from the consequences of his own viciousness and depravity in the commission of his crimes. The rule announced in the majority opinion substantiates the belief that the more horrible and shocking the acts in the commission of a crime, the more likely is the guilty party able to escape conviction through the exclusion of such evidence "because it would prejudice the jury."

An accused, it goes without saying, should be protected against evidence which is not relevant, and evidence should be particularly scrutinized as to relevancy if it tends to excite the emotions. Yet, if relevant, the jury is entitled to assert its righteous indignation over a particularly revolting crime.

As we have said previously, the majority opinion upsets the well established principles in Indiana with reference to the admissibility of photographs. In doing this it ignores the Indiana law and goes outside the

State in a hunt for precedent. The majority opinion cites a Kentucky case, *Craft* v. *Commonwealth* (1950), 312 Ky. 700, 229 S. W. 2d 465, and says that court rejected a photograph because the picture of the autopsy showed the wound was sewed together. The majority opinion also cites an Alabama case, *McKee* v. *State* (1947), 33 Ala. App. 171, 31 So. 2d 656, for the proposition that a picture of an autopsy showing an open incision made to discover the cause of death was not admissible. May we assume from the citation of these two cases with approval that no incisions or wounds, open or sewed up, are competent for a jury to view, since they appear too repulsive and gruesome, even though such incisions were necessary to discover with certainty the cause of death? Must the jury take only the colorless words of a physician, using in many instances highly technical language such as "trauma" for "blow" and "contusion" for "bruise" and other strictly medical terminology as their only means for determining the character, location, size, etc. of the wounds inflicted, when a picture would reveal the facts much more accurately? Are the feelings and sensibilities of the jury now to be the determining limitation upon the admissibility of evidence, rather than relevancy? The cutting down on a full and complete disclosure of all the facts in a case is dangerous tampering and too likely to result in a miscarriage of justice in another case.

In a Montana case cited in the majority opinion to support its reasoning, pictures were rejected, the majority opinion says, because the Doctor decided "he did not need the photographs to establish his findings." Shall we assume, since this case is cited with approval, that a physician should determine what the jury shall see or hear in a case of this sort? The same case also

held that colored pictures were not admissible because they were calculated to arouse the sympathies and prejudice of the jury. Are we to assume as a result of the approval of that case that colored pictures are not admissible in courts in Indiana any longer even though they are more realistic and exact in their representation of the facts, than the black and white pictures which can not be truly accurate in that respect?

In another Kentucky case offered by the majority opinion for the result which it reaches, it is held that not even the shirt of the victim which showed the bullet holes was admissible. Such a principle is absolutely contrary to the long established precedent in Indiana. *Johnson* v. *State* (1929), 201 Ind. 264, 167 N. E. 531; *Story* v. *The State* (1885), 99 Ind. 413; *Davidson* v. *The State* (1893), 135 Ind. 254, 34 N. E. 972; *Siberry* v. *The State* (1893), 133 Ind. 677, 33 N. E. 681; *Hawkins* v. *State, supra* (1941), 219 Ind. 116, 37 N. E. 2d 79.

We can see no reason for going to Kentucky or any of the other states for precedent to decide this case with the law so set forth in well reasoned Indiana cases. *Hawkins* v. *State, supra* (1941), 219 Ind. 116, 37 N. E. 2d 79; *Wahl* v. *State, supra* (1951), 229 Ind. 521, 98 N. E. 2d 671; *Hicks* v. *State, supra* (1938), 213 Ind. 277, 11 N. E. 2d 171; *Thrawley* v. *State, supra* (1899), 153 Ind. 375, 55 N. E. 95; *Blue* v. *State, supra* (1946), 224 Ind. 394, 67 N. E. 2d 377; *McDonald* v. *State* (1954), 233 Ind. 441, 118 N. E. 2d 891; *Deal* v. *The State* (1895), 140 Ind. 354, 39 N. E. 930; *Anderson* v. *State* (1933), 205 Ind. 607, 186 N. E. 316.

It appears to us the cases used are unusual and rather freakish and deviate from the vast majority of opinions to the contrary. This court, by citing with approval and quoting from these cases, makes them

an authority in Indiana law. Therefore, regardless of how relevant and material a picture may be regarding the injuries inflicted upon a victim in a criminal case, if it shocks the sensibilities of the jury or arouses their righteous indignation because of the viciousness and awfulness of the crime committed by the defendant, the pictures are not admissible. It would follow that oral testimony about facts which the pictures reveal should likewise be excluded.

A murder trial or a rape case is never a Sunday School picnic and can not be turned into such. We can not say this better than the statement quoted with approval in the Hawkins Case (pp. 132-133) :

"Such a subject is never a nice one to investigate. Any of the details have a decided tendency to horrify and to appall; but a court can not arrange for lively music to keep the jury cheerful while the state's case in a murder trial is being presented, and gruesome evidence can not be suppressed merely because it may strongly tend to agitate the jury's feeling."

This was the Indiana Supreme Court speaking in 1941 on a question of the kind here.

All evidence is relevant which throws or tends to throw any light upon the guilt or innocence of the defendant or goes to aggravate or mitigate the crime when the jury has to fix the punishment.

". . . When evidence tends to prove a fact, however slight that tendency may be, it is admissible. That is the only guide the court can have in determining the admissibility of evidence." *Deal* v. *State, supra* (1895), 140 Ind. 354, p. 373, 39 N. E. 930; *Anderson* v. *State, supra* (1933), 205 Ind. 607, 186 N. E. 316; *Blue* v. *State, supra* (1946), 224 Ind. 394, 67 N. E. 2d 377; Underhill on Criminal Evidence, 2nd ed. p. 164.

The matter of rejection or admission of evidence, if

relevant, is not a matter of judicial grace. It is a matter of right, whether it be the State or the defendant.

As a court of appeals we have no power to weigh the evidence. This is solely the province of the jury and the trial court on a motion for a new trial. The trial judge was present. He knew the situation in a way that can not be translated into the record. If these photographs went to prove how the victim died they were relevant. We have no right to decide after a prosecuting attorney has introduced sufficient evidence to meet the minimum requirements of his case that no other evidence is admissible because it was not "necessary."

The majority opinion charges that the "purpose" and "object" of the photographs was to prejudice the jury. This is a matter of opinion. We, as a court of appeals, have no right to draw that conclusion if the evidence of the autopsy was relevant.

The majority opinion finally lectures the prosecutor as to his duty and overrules the trial court, although all they did was follow the law as set forth in *Hawkins* v. *State, supra.* How did the trial court and prosecuting attorney know that this court would repudiate that case and rely upon some unusual cases from other jurisdictions such as Alabama, Montana and Kentucky? How could the trial court correct an alleged error if no objection was made before it on the ground that the photographs were not a correct and true representation assuming it to be true?

Our sympathies go out to a condemned man, but the law should follow established rules and principles and be no respecter of persons.

NOTE.—Reported in 153 N. E. 2d 899.