## LESLIE JONES *v.* STATE OF INDIANA.

[No. 375S58. Filed June 23, 1976.]

*Howard S. Grimm, Jr., Grimm & Grimm,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Roland Duvall,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant, Leslie Jones, was indicted for first degree murder. He was found guilty of second degree murder, Ind. Code § 35-1-54-1 (Burns 1975), in a trial by jury and sentenced to a term of fifteen to twenty-five years.

On appeal, appellant objects to the admission of three photographs. His arguments are that the court must balance the possibility of prejudice against the necessity for using the photographs, and that the trial court abused its discretion in admitting these photographs. He argues also that the court abused its discretion in not withdrawing from the consideration of the jury photographs which the State did not use, after admission, to illustrate a relevant point, and that the court's failure to admonish the jury to disregard the photographs and failure to declare a mistrial were abuses of discretion.

The first of the three photographs was a black and white photograph of the victim lying on the floor of her home, as she was found by the police within seconds of appellant's leaving the scene. At trial, appellant objected that the photograph was merely cumulative of testimony that the victim was dead and was lying on the floor. Originally, photographs were admissible only if a witness *were* able to testify that he had seen what the photograph portrayed. "The mere picture or map itself cannot be received except as a non-verbal expression of the *testimony of some witness* competent to speak to the facts represented." 3 WIGMORE, EVIDENCE § 790 at 218-19 (Chadbourn ed. 1970). In determining the admissibility of allegedly cumulative evidence, the judge must determine when additional evidence, although relevant, is "practically superfluous or relatively unprofitable." 6 WIGMORE, EVIDENCE § 1907, 1908. A photograph is perceived by the mind through the eye, testimony through the ear. A single photograph portraying what has been orally described is not merely cumulative or excessive. *Cooper* v. *State,* (1974) 261 Ind. 659, 309 N.E.2d 807.

At trial, appellant also objected that the photograph was inflammatory. If we were to accept appellant's balancing

argument, we would find this photograph of the ▮ body at the scene of the crime to be admissible. *Patterson* v. *State*, (1975) 263 Ind. 55, 324 N.E.2d 482. The photograph is relevant to show the circumstances of the victim's death. It aids the State in its proof that the victim died and that her death was by violence. It may give the jury a clue as to cause of death, motive for the homicide, whether the act was especially brutal indicative of malice, the credibility of a claim of self-defense, etc.

The second and third photographs objected to were color photographs of the back of the throat and of the larynx opened from the front. At trial, appellant objected to the admission of these photographs because "with no more explanation than has been given [they] would be grossly misleading to the jury." The court overruled his objection. At the end of the doctor's testimony, counsel moved that the court admonish the jury "that they should pay no attention to [the exhibits introduced during the doctor's testimony] for the reason that there was no testimony of the doctor directly pointing to the photographs aiding or illustrating what the photographs supposedly depicted." The court overruled the motion, and appellant then moved that the submission of the cause to the jury be withdrawn because of prejudice from the jury's consideration of the photographs. The court overruled the motion to withdraw submission also.

On appeal, appellant argues that this Court should require suppression of the two photographs because they were as inflammatory and prejudicial as the photographs excluded in *Kiefer* v. *State*, (1958) 239 Ind. 103, 153 N.E.2d 899. Appellant concludes that showing the jury photographs of the parts of the victim's body, without an attempt to explain the photographs' relevance, is as reprehensible as showing the autopsy photographs in *Kiefer*.

These photographs of the back of the neck and of the larynx were relevant to the issue of cause of death. We do not doubt that jurors may be unnerved by photographs of particular organs of the victim's body. Certainly such photographs im-

press upon jurors the finality of the act of homicide. However, such photographs in no way mislead the jury into attributing to the defendant the wounds made by the doctor's scalpel. They are less likely to anger jurors than photographs which show the severity of the wounds inflicted by the attacker, which are certainly admissible to show malice and purpose.

In this case, the doctor had explained his procedure in detail and had described his examination of the victim's skull, which had been fractured, causing injury to the brain. The prosecutor asked:

"Q. At that point, were you able to make any determination as to her cause of death?

A. I wasn't satisfied at that point.

Q. What did you do, if anything?

A. Following that, I went into the structures of the neck and throat.

Q. Doctor, were any of the bruises or injuries you testified to that were sustained to the head of Sarah E. Ward, were they of sufficient degree to result in death?

A. They could have; yes, sir.

Q. Now, you indicated that you were not satisfied with your examination of just the skull, and you proceeded I believe you said with the throat, is that correct?

A. Yes, sir.

Q. Now, then, in connection with your further internal examination of the throat area, what did you do, and what were your findings?

A. The skin of the neck was reflected up toward the face. The muscles of the front of the neck were dissected away. The larynx, or the voice box, was removed, and the back of throat finally examined. The findings were bruises of the muscle, the muscles in the front of the neck, bruises, a circular bruise around the circumference of the lining membrane of the larynx, the voice box, and bruises of the lining membrane of the back of the throat, and a fracture of the hyoid bone, which is a small bone in the—high in the front of the neck.

Q. Now, Doctor, you testified concerning bruises to various areas. How are you able to determine these were bruises?

A. There was red discoloration of the membranes and of the muscles and of the skin of the neck.

Q. How would that red discoloration compare with the other tissue around there?

A. Well, the tissues vary from various shades of pink, and bruises are deep red or bluish red.

Q. Doctor, do you have an opinion as to what would cause those types of bruises you have just testified to concerning the larynx, the muscles around the larynx, and the other tissue there?

A. These injuries are characteristic of manual strangulation.

Q. Now, Doctor, did that conclude your internal examination of Sarah E. Ward?

A. Yes, sir.

Q. Based upon your autopsy consisting of the external examination and the internal examination, were you able to formulate an opinion as to the cause of her death?

A. Yes, sir.

Q. And what was that?

A. In my opinion, Sarah Ward died of manual strangulation."

The photograph of the back of the throat shows a bluish discoloration in the center of light pink tissue and that of the larynx shows a dark black area in the center of orange tissue. Although the jurors would have to depend upon the doctor's testimony that these discolorations were significant and indicative of bruises, they certainly could see for themselves that the discolorations were easily noticeable by the human eye, appeared abnormal, and, thus, were corroborative of the doctor's conclusion that the cause of death was manual strangulation.

Photographs taken at the time of the autopsy are not necessarily irrelevant or prejudicial. In *Kiefer* v. *State, supra,* the photographs "did not show the position of the parties to the crime nor correctly show the wounds of the victim or the cause of her death. They did not 'shed any light on any issue' or enlighten the jury on any fact in issue, but served only to arouse passion and prejudice." 239 Ind. at 117. In contrast, in this case, the photographs, with the doctor's testimony, showed cause of death and were probative of the issues of

malice and purpose, since they showed that the assailant not only beat the woman over the head with a blunt object, but also manually strangled her.

The doctor correctly testified that the photographs did not aid him in establishing the cause of death. Rather, the photographs depict for the jury the condition of the neck and larynx which aided him in establishing cause of death. The doctor's testimony adequately explained the photographs, and the jury could have understood his explanation better by seeing the photographs. Thus they were relevant; they were not misleading or distorted. There was no error in their admission or in the court's overruling appellant's related motions.

The judgment of the trial court is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 349 N.E.2d 143.