**Doyle E. GUFFEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 33S00–8807–CR–646.**

Supreme Court of Indiana.

June 14, 1990.

Rehearing Denied Aug. 29, 1990.

Kevin P. McGoff, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder. Appellant received a sentence of forty-five (45) years, enhanced by thirty (30) years by reason of the finding that he was a habitual offender.

The facts are: On June 14, 1986, while drinking with a friend, appellant and Daniel Storms, the decedent in this case, had an altercation resulting in appellant being struck in the face and Storms threatening him with a knife. Later that day, as Jeff Guinn, Robert Binford, Daniel Storms, and appellant were driving toward New Castle, Guinn overheard a conversation between appellant and Storms in which appellant offered to kill someone in Muncie for Storms for $1,500.

When they arrived at appellant's house, Guinn left the car to find another party and Binford, Storms, and appellant got into a fight, which ended by appellant striking Storms in the head with a pipe. Guinn then returned to the car and appellant accompanied him into the house where appellant obtained a sawed-off shotgun. He then directed Guinn to follow him to Muncie.

After some arguing, appellant got into the back of Storms' car and Binford and Storms got into the front with Binford driving. After a short distance, appellant requested Binford to stop the car stating that he wanted to get out. Binford stopped the car and got out. Because the car was a two-door, it was necessary for Storms to allow appellant to exit through the passenger-side door. As that was taking place, Binford heard a shot and saw Storms fall to the ground. When Binford ran around the back of the car, appellant pointed the gun at him and said, "I didn't do nothing and don't you forget that."

Appellant then removed Storms' wallet from his pocket and with Binford's assistance put Storms' body into the car. Appellant and Binford then jumped into the car with Guinn, who had been following them, and drove to a nearby gasoline station. Guinn filled a plastic jug with gasoline and appellant drove back to Storms' car. Appellant poured gasoline in and around Storms' car and set it on fire.

Members of the Sheriff's Department, investigating the reported fire, found the automobile engulfed in flames with Storms' badly burned body inside. However, an autopsy disclosed that Storms died from a gunshot which had struck him in the back of the head and that death had occurred prior to the fire. Subsequent police investigation resulted in the parties, including appellant who was apprehended in Kentucky, being arrested and returned to Indiana.

At trial, appellant testified he did not intend to shoot Storms but the gun went off accidentally. He claimed that as he attempted to exit the car carrying the shotgun, Storms grabbed the barrel of the gun, that a struggle ensued, that he wrested the gun from Storms' grasp, but then Storms grabbed him by the leg. He contends that during this struggle the gun accidentally discharged.

Appellant claims the trial court erred in refusing to instruct the jury on the lesser-included offenses of involuntary manslaughter and battery. An examination of this record shows that during the settling of the instructions, the trial judge correctly observed that voluntary manslaughter was a proper included instruction to be given in a murder charge. He also observed that inasmuch as appellant was claiming that the gun was discharged accidentally, it would be proper to give a reckless homicide instruction.

Appellant's counsel argued that the court should give an instruction on involuntary manslaughter and on battery. However, the trial judge correctly informed counsel that under the case of *Swafford v. State* (1981), Ind., 421 N.E.2d 596 this Court had held that even though a deliberate shooting necessarily includes a battery, when the victim dies of such shooting, the

battery is no longer a viable charge. Accordingly, the trial judge correctly refused to give an instruction on battery.

■ The trial court also correctly pointed out that the statute defining involuntary manslaughter, Ind.Code § 35–42–1–4, provides that it is committed when one kills another person while attempting to commit either a Class C or Class D felony or Class A misdemeanor that inherently poses a risk of serious bodily injury or a battery. In the case at bar, although the evidence showed that appellant and the decedent were battering each other, such batteries were not the direct cause of the decedent's death. The decedent's death was caused by a shotgun blast to the back of his head which was done either accidentally, which would bring it within the realm of reckless homicide, or deliberately, which would place it in the category of either murder or voluntary manslaughter, if one would assume there was enough provocation to so reduce the crime.

The judge's observations concerning the law as applied to the facts in this case were correct. We see no reversible error in the failure to give the instruction for either involuntary manslaughter or battery.

■ Appellant claims the trial court erred by admitting six photographs which were cumulative, irrelevant, gruesome, and calculated to inflame and prejudice the jury. The complained-of photographs show the burned-out car at a distance from various angles. Some of the photographs are close-ups of the burned-out car with portions of the decedent's body visible, including one leg hanging out the car window.

■ Photographs of a crime scene are generally admissible to show the jury the place where the crime occurred and to orient them to the layout of the scene. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, *cert. denied,* — U.S. —, 110 S.Ct. 257, 107 L.Ed.2d 206; *Wesby v. State* (1989), Ind., 535 N.E.2d 133. All photographs complained of here qualify under this admissibility standard.

Appellant argues strongly that this Court has deviated too far from the standard laid down in *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899 and has progressed to the point that virtually no photographs are excluded because of their gruesome nature. However, an examination of the instant photographs shows that they are far less gruesome than those held admissible in many cases. The body was burned so badly that even the leg protruding from the car is barely recognizable as a human leg.

Although appellant claims that the fire exposed the victim's internal organs, such are not discernible in the photographs in this record. The record further discloses that the trial judge in fact did exclude several photographs offered by the State, finding them too gruesome to be placed in evidence. It is obvious from this record that the trial court was well-acquainted with the proposition of law stated in *Kiefer* and he conscientiously applied the same. We see no reversible error in the admission of the photographic exhibits.

■ Appellant contends the trial court erred in refusing his tendered flight instruction. Appellant tendered an instruction which, although correctly stating the law as to flight, proceeded to give a rather lengthy dissertation presuming to give numerous excuses which the jury could consider for appellant having fled the scene. The trial court gave a more correct and more succinct instruction concerning flight. Where a tendered instruction is covered by other instructions given by the trial court, its refusal does not constitute error. *Buza v. State* (1988), Ind., 529 N.E.2d 334. The trial court did not err in refusing to give the tendered instruction.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.