**STATE of Tennessee, Appellee,**

v.

**Frank Andrew McCALL, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 1, 1985.

On Petition to Rehear July 19, 1985.

Permission to Appeal Denied by Supreme Court Sept. 30, 1985.

William M. Leech, Jr., Atty. Gen. & Reporter, Kimberly J. Dean, Asst. Atty. Gen., Nashville, Charles Hawk, Dist. Atty. Gen., Kingston, Edward Bailey, Asst. Dist. Atty. Gen., Lenior City, Roger Delp, Asst. Dist. Attys. Gen., Loudon, for appellee.

Ralph E. Harwell, Randall E. Nichols, Knoxville, for appellant.

## OPINION

O'BRIEN, Judge.

This case comes from the Criminal Court for Roane County. Defendant was convicted of first degree murder and possession with intent to sell a Schedule II controlled substance. The jury set punishment at life imprisonment for murder and a fine of Fifteen Thousand Dollars ($15,000) for possession. At a subsequent sentencing hearing the trial court set additional punishment of eight (8) years imprisonment on the possession charge, to be served consecutively to the life sentence.

The homicide for which defendant was convicted occurred on March 15, 1983, about 10:30 p.m. The victim was Dennis Ray Armes, a deputy with the Roane County Sheriff's Department.

The first issue to be addressed is a challenge to the sufficiency of the evidence to support the verdict of guilty of homicide as well as possession with intent to sell cocaine. It is strongly argued, and with great challenge, that any evidence showing willfulness, deliberation, premeditation or malice aforethought, or showing defendant was a participant in the actual shooting must be inferred from his presence at the scene or from the description of events leading to the shooting. It is insisted the further inference of the elements necessary to a conviction of murder in the first degree is an impermissible stacking of inferences. Defendant also asserts there was no evidence to show he possessed cocaine with intent to sell. That his admission of past sales and intent at some future time to purchase for resale will not support the conviction for possession with intent to sell on this particular date.

McCall testified that, for some months prior to this crime, he had bought and sold small quantities of cocaine to support his habit. Later, when a legitimate business venture fell through, he decided he would purchase a larger quantity of the drug to sell for profit. With that purpose in mind he contacted known dealers to see if he could make the necessary connections.

According to his testimony, on the night of the shooting he had set up a meeting at the Pizza Hut on Kingston Pike in Knoxville, with a man named Steve Dotson to discuss the purchase of a large amount of cocaine. He asked a friend, Bob Coatney, to ride up with him. At the meeting, Dotson produced a small amount of cocaine which McCall sampled, and arranged to buy an ounce at that time prior to negotiating the purchase of a larger amount. Dotson had left the drug at a friend's house, so McCall agreed to go there with him to make the purchase. On the way, McCall stopped at a friend's house to pick up some scales for use in cutting the drug into smaller quantities for sale. McCall then took Highway 58 toward Roane County. Enroute Dotson pulled a gun out and placed it on the floor of the car.

Traveling on Highway 58 defendant saw the blue lights of a police car behind him, pulled off the road, and got out of the car. The officer asked for identification and McCall was reaching for his wallet when he saw Dotson leaning across the seat with the pistol. He believed Dotson fired first, then as the officer was moving back he returned fire. The first shot hit defendant in the groin, two shots entered his chest, a fourth hit him in the eye and a fifth in his leg. He could not tell whether Dotson or

the officer had been hit in the exchange of shots.

After the shooting stopped McCall was lying on the ground and recalled seeing Dotson lay the gun beside him and yanking his wallet out, then run across the field. He saw the officer lying in the street, not moving. He remembered picking up the gun to shoot at Dotson, and seeing headlights coming up the road. He got back into his car, threw out the bag of cocaine, and the gun, and drove off. He remembered being at the trailer of a man named Gunter and the police being there.

The State's evidence shows Deputy Armes contacted his dispatcher at 10:27 p.m., gave his location, and indicated he was checking a vehicle with tag number 3–H8278. After several minutes the dispatcher unsuccessfully endeavored to reach Armes. He then contacted other officers to investigate. Further calls came in to the dispatcher that shots had been fired near the Fairview School. Several nearby residents saw the blue lights of the police car and heard the shots.

Randy Humphreys was driving along Highway 58 approaching the intersection of Highway 72 when he saw the blue lights on a patrol car approximately a quarter of a mile south of that intersection. He drove to that location out of curiosity and pulled up approximately thirty yards behind the patrol car. He observed someone near the center line of the highway holding a pistol in his hand. As he watched that person move toward the right hand side of the road, he also saw someone lying still in the northbound traffic lane. The patrol car was standing in the southbound lane. As he was backing away another car pulled along side. He informed the occupant there was someone down by the patrol car with a gun. He then went to call the police.

Larry Moore also saw the flashing lights and went to investigate. He saw the patrolman lying across the road and tried to signal a northbound car to stop. The car ran over the patrolman before coming to a halt. Moore passed on through the scene to stop any other approaching traffic.

Several officers described the scene, pointing out where the officer's gun was found, where the murder weapon, cocaine, spent shells, pools of blood and the body were located. Dr. William S. Elliott, pathologist, testified as to the wounds found on the victim. The single gunshot wound entered the chest at a fairly steep angle, down and left, passing through and partially destroying the aorta, and the back and left side of the heart and lungs. Death, in his opinion, occurred in less than twelve seconds after being shot. The bullet wound came first and the victim was dead when hit by the car. All of the other injuries he sustained were caused by that accident.

TBI Criminologist Diane Konkoly performed an atomic absorption test on swabs taken from defendant's hands. She expressed the opinion the results were consistent with defendant having handled or fired a weapon. TBI Forensic Chemist Phillip Smith testified that the substance found in a plastic bag at the scene was cocaine. Raymond Siler, another forensic chemist testified the white substance found on the scales in defendant's car was the residue of cocaine.

■ After viewing all of the evidence in the light most favorable to the State, we find a rational trier of fact could have found defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence met the requirements of T.R. A.P. Rule 13(e).

Error is charged on the failure of the trial court to: (1) grant a change of venue; (2) suppress statements made by the defendant; (3) suppress the fruits of a warrantless search of his vehicle; (4) and in allowing evidence relating to the atomic absorption test results. This record does not contain any transcript of the hearings on various motions made on these issues, therefore this Court cannot make any ruling on the merits. Nor does the record contain any written findings of fact by the

trial judge to support his conclusions of law in ruling on said motions. Under such circumstances the ruling of the trial court is presumed to be correct. See *State v. Jones,* 623 S.W.2d 129, 131 (Tenn.Cr.App. 1981).

Defendant raises an issue pertaining to certain statements made by him to Trooper Jesse Brooks on the grounds that these statements were not provided in discovery although requested in accordance with Rule 16(a)(1)(A), Tenn.R.Crim.P. The remarks are contained in the record. It is not necessary to repeat them here. The oral statement of defendant in question were responses to interrogation by police officers after his capture. He was asked, "What happened", and "Who had shot Officer Armes". He responded that Steve had shot him. He was "Asked where he was at, and he said he was laying in the bushes, (sic) dead." He was then asked about which bushes and replied, "next to the patrol car."

█ Tenn.R.Crim.P. 16(a)(1)(A) provides, in pertinent part for disclosure of the substance of any oral statement which the State intends to offer into evidence at the trial made by the defendant whether before or after arrest in response to interrogations by any person then known to the defendant to be a law enforcement officer. It is obvious from the record that defense counsel was entitled to disclosure of this statement by the defendant. Our impression from reading this record is that his response to the question indicated where he thought the body of the officer was lying. The court cut off any further examination in reference to this particular sequence of statements by the defendant. In either event we consider the error harmless.

Defendant contends it was error to allow the State to voir dire the jury as to their feelings, opinions, and scruples relating to the death penalty prior to the determination of defendant's guilt or innocence.

█ It is defendant's insistence that a "death-qualified" jury is prosecution prone and not impartial as required by the Sixth and Fourteenth Amendments. Defendant relies upon the case of *Grigsby v. Mabry,* 569 F.Supp. 1273 (E.D.Ark.1983), as authority showing a death qualification process predisposes or might predispose a trier of fact unnecessarily during the trial phase and so is violative of due process. This issue has been settled in this State by our Supreme Court opinion in *State v. McKay,* 680 S.W.2d 447 (Tenn.1984); opinion on petition to rehear filed November 19, 1984. Defendant has presented no persuasive evidence not previously considered by our Supreme Court. The Constitution guarantees both the State and the accused an impartial jury. This guarantee does not mean the State has a right to present its case to a jury most likely to convict; neither does it mean the State must present its case to a jury least likely to convict. The logical converse of the proposition that death-qualified jurors are conviction prone is that non-death qualified jurors are acquittal prone. *Smith v. Balkcom,* 660 F.2d 573, 579 (5th Cir.1981). Impartiality requires not only freedom from jury bias against the accused and for the prosecution, but freedom from jury bias for the accused and against the prosecution. *Houston v. State,* 593 S.W.2d 267 (Tenn.1980).

Defendant submits that the admission of photographs of the deceased taken at the scene of the crime and in conjunction with the autopsy examination were so inflammatory as to deprive him of a fair trial. He insists the photographs are not relevant to any issue at trial and are highly prejudicial. Three of the contested photographs are in black and white and were taken at the scene. Three photographs are in color, taken at the autopsy examination. At trial the prosecutor argued the pictures were relevant to show the location of the deceased, where and how the body came to rest, that the deceased had died from a gunshot wound, and that the body had been dragged from its original location. The prosecutor insisted he was entitled to show the crime scene as defendant left it and the means and manner in which death was inflicted in order to prove malice. The trial

court admitted the subject photos without comment.

■ Relevant evidence means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978). Matters to be taken into consideration include the value of the photographs as evidence, that is their accuracy and clarity, and whether they were taken before the corpse was moved, if the position and location of the body when found is material; the inadequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a *prima facie* case of guilt or to rebut the defendant's contentions. *Banks* at 951.

■ As the court noted in *Banks*, photographs made during or after an autopsy are most often condemned, citing *Kiefer v. State*, 239 Ind. 103, 153 N.E.2d 899 (1958), because they present an even more horrifying sight and show the body in an altered condition. . . . In this case we find the opposite to be true. Three of the photographs admitted here were taken during the autopsy stage. One of these, showing the body of the deceased officer after it had been removed from the scene, and cleaned from its prior bloody and gory condition, was perhaps the only relevant photo of the lot, showing the chest wound which was the cause of death and what was in all likelihood a bullet wound to his left hand. Another morgue shot showed the officer's leg which had been in a distorted and mutilated condition caused by being run over by an automobile in the street after he was dead from the bullet wound. A third photo was a more graphic depiction of the wound to his left hand. This picture in itself is not one which could be taken to create an undue tendency by a jury to suggest decision on an improper basis.

■ Those three pictures taken of the deceased deputy lying in the roadway are as completely irrelevant to the issues in this case as they are grossly gruesome,

horrifying, and inflammatory. The body of the deceased deputy as portrayed in the photos had been dragged several feet down the highway by a vehicle passing through after the defendant had departed the scene. With the exception of the single gunshot wound to the chest, all of the mutilations to the corpse were caused by the subsequent passing vehicle. The pathologist testimony clearly established the victim died of the gunshot wound to the chest almost immediately and was dead when struck by the passing vehicle. The facts concerning the only relevant injuries and the cause of death were adequately established and explained by the pathologist. We find, as did the court in *Banks*, supra, that the prejudicial effect of these photographs far outweigh their probative value. It was error for the trial court to admit these three photos in evidence. As we have noted, in this case too, as in *Banks*, the trial judge's reasons for admitting the photographs do not appear of record. This is an omission of considerable seriousness. Without a statement of reasons, the appellate court is constrained to second guess the trial judge in a determination lying within his sound discretion. The record should show the factors considered by lower courts and their reasons for admitting such evidence for consideration by the jury. See *Banks* at 952.

■ However, in trying to evaluate the trial court's reasons for admitting such photographs in evidence, we have been required to read and re-read this record. Despite trial counsel's earnest arguments to the contrary, and his diligent efforts on behalf of his client, we are satisfied that the evidence points directly and affirmatively to defendant as the person responsible for the homicide in this case. We have found that the jury was warranted in returning their verdict of guilty based on the evidence. The State sought the death penalty. The jury saw fit to sentence the defendant to life imprisonment. Our scrutiny of this record satisfies us that there is no indication the erroneous admission of the photographs in this case affected the

results of the trial. We find this issue to be without merit.

Additionally, we find no merit to those issues which must be considered waived by virtue of failure to provide a complete appellate record. There is no evidence in this record of prejudice on the part of any juror which would have warranted a change of venue. In examining the record we find no instance that defendant's statements were involuntary, or were taken in violation of his constitutional rights under the Fifth or Fourteenth Amendments. The complaint relative to the admission of the results of the atomic absorption test is also without merit. The technician who testified in this regard said the results of the test show defendant could have fired a gun. In his testimony defendant admitted holding the death weapon and attempting to fire it at his purported companion after the deputy had been shot. A major part of his defense was related to the fact that the presence of antimony, barium, and lead, the elements found when a person fires a handgun, exist naturally in society and are highly transferable. If there was error in the admission of the evidence it was harmless under the circumstances. We find no prejudicial error in the admission of the evidence found in the search of defendant's automobile.

We do find the evidence in this case clearly warrants the verdict of the jury in establishing defendant's guilt, and affirm the judgment of the trial court.

WALKER, P.J., and DWYER, J., concur.

## OPINION ON PETITION TO REHEAR

O'BRIEN, Judge.

A timely motion to supplement the record in this case, coupled with a petition to rehear, was considered and, in pertinent part, granted. The record was supplemented to submit to this Court the transcript of the proceedings in the trial court relative to pretrial motions which were heard on July 18, 1983. The petition to rehear was granted, limited to the issue of the admission of evidence found in the search of defendant's automobile. Appropriate records, briefs and arguments of counsel have been filed and the petition is now properly before us for disposition.

Defense counsel had filed a pretrial motion to suppress evidence obtained in a purported search of defendant's automobile. It is insisted here that counsel was unable to proceed on July 18, 1983, on a factual basis or introduce any proof as to the search and seizure because the State had not furnished discovery of the names of the persons making any such search or seizure. It is further contended the court continued a hearing on the motion to a later date and ordered the State to provide counsel with the information requested, and, apparently confusing the import of his earlier order, denied the motion on August 22, 1983, the day of trial, without any further hearing on the issue.

The State does not refute any of the foregoing, but on the other hand, declares that all of the evidence found within the passenger compartment of the vehicle was properly admitted in evidence under the doctrine of plain view. Alternatively they argue the search of the passenger area of the vehicle was incident to a lawful arrest, and finally that the search was authorized under the probable cause and exigent circumstances exception to the warrant requirement. It is argued the search of the trunk of the vehicle as well as the passenger compartment was justified under the rule laid down in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), holding that police may conduct a warrantless search of a vehicle "as thorough as a magistrate could authorize in a warrant", when they have probable cause to believe contraband is present in the vehicle.

This trial resulted from the homicide of a Roane County Deputy Sheriff which occurred on Highway 58 in Roane County, not far removed from the northern boundary line of McMinn County. The facts surrounding the homicide were related in our original opinion. The victim, Deputy Dennis Armes, was found lying in the road-

way, beside his patrol car. No one else was in the vicinity when his body was found. While authorities were investigating the homicide they received a report that an injured person had attempted to get into a grocery store in McMinn County, near the Roane County line. The trail ultimately led to defendant who was badly wounded, and in custody. A white Toyota automobile bearing a Knox County license was parked in the area. Defendant admitted he had been wounded at the scene of the homicide and informed the police that a companion, Steve Dotson, had shot the officer. The scene at the place where defendant was captured became extremely hectic. At one time it was reported there were fourteen or fifteen officers present. It appears that numbers of the officers looked at or examined defendant's automobile, which was sitting in close proximity to the trailer where defendant was captured. The investigator from the Roane County Attorney General's Office reported he saw what appeared to be blood on the driver's side of the automobile, blood on the floor board, a pillow on the passenger seat, a hat in the floor board on the passenger side, and two or three beer cans on the rear floor board. Pictures of these items were introduced as exhibits. Highway Patrolman Paul Jarnigan, who assisted Investigator Clarence Robbins in the examination of defendant's automobile, testified they looked in the trunk of the vehicle and found a box containing a set of scales. These, apparently of the type commonly used for dividing drugs from large into smaller portions, were displayed to the jury. Other evidence indicated there was a cocaine residue on the scales.

■■■ Defendant's contention that he was unable to proceed on his motion to suppress evidence of the search of his automobile, or introduce any proof as to the search and seizure, because the State had not provided discovery of the names of persons who had made the purported search is an erroneous conception. It is undisputed that there was no search warrant for the automobile. A warrantless search and[or] seizure is presumed to be illegal, and the State bears the burden of showing any such search or seizure to be reasonable. See *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *State v. Crabtree*, 655 S.W.2d 173, 179 (Tenn.Cr.App.1983). A warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant, *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978), and when entry is made under exigent circumstances, a search is reasonable so long as it is necessary to effectuate the purpose of the entry. See *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967). If the warrantless entry is reasonable under the circumstances, then officers may seize what is in plain view. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). If, however, the warrantless entry is unreasonable, then the seizure is illegal and evidence seized cannot be used against an accused. *Crabtree*, supra.

■■■ We are in complete accord with the State's position that any evidence found in the passenger compartment of defendant's vehicle was certainly admissible under the doctrine of plain view. An officer had been slain. The authorities were in pursuit of his assailant. Defendant was admittedly fleeing from the scene of the homicide when he attempted to assault another person while endeavoring to seek assistance in his escape. Evidently weakened from his wounds, he was overcome by the second victim, who called the police. In short order the area was teeming with police officers who completely surrounded defendant's automobile. It was impossible for the officers not to observe that which was exposed for all the world to see. "[t]he seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming there is probable cause to associate the property with criminal activity.*" *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) citing *Payton v. New York*, 445 U.S.

573, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). (Emphasis in Brown text).

We are also satisfied that the search of the trunk of defendant's vehicle was justified. There can be no doubt that there was probable cause to search as well as exigent circumstances although in this case probable cause alone was sufficient to make the search reasonable as an exception to the Fourth Amendment proscription against unreasonable searches and seizures. See *United States v. Ross*, supra. Although the trial judge in this case did not articulate his reasons for overruling the motion to suppress the evidence obtained from defendant's automobile, we conclude that the most extensive hearing would not have justified a suppression of evidence under the facts contained in this record.

In our original opinion we held that a complaint relating to the admission of atomic absorption test results was without merit, stating that if there was error in the admission of the evidence it was harmless under the circumstances. The test was made in an effort to determine whether or not defendant had recently fired a gun. Although our order granting the petition to rehear limited the issue for review to be the question of admission of evidence found in the search of defendant's automobile, at defendant's request we now reconsider our previous ruling relative to the admission of atomic absorption test results and hold that the evidence was properly admitted under the authority of *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

Having reconsidered those matters raised in the petition to rehear which we consider pertinent, we reaffirm our prior judgment as augmented by this order.

The judgment of the trial court must stand affirmed.

WALKER, P.J., and DWYER, J., concur.